I'm here on Appellant Rice's behalf, and this is a very simple, straightforward Missouri insurance coverage dispute. Missouri case law requires that the court review the entire policy to determine if there's two competing provisions. In this case, there are two competing provisions that must be analyzed. And so I'm going to briefly address why the trial court committed an error, and secondly, because this is a de novo review, analyze those two provisions to help the court determine why there is an ambiguity. At the trial court level, both the appellee, Allstate, and the appellant, Rice argued two provisions, the definition of insured and the permissive use provision. In appellant's or in appellee Allstate's arguments, they argued in simultaneously order in their statement of facts, the definition of insured and the definition of permissive use. Rice did the same thing in her argument, the two statement of facts right back to back, the definition of insured and the definition of permissive use. Allstate and their argument in summary judgment addressed the interplay between these two. Rice and her argument addressed the interplay between insured and permissive use. Unfortunately, the trial court did not analyze the second provision. In fact, reading from the court's opinion, appendix page 99, as a result the definition of insured person from the personal umbrella policy issued by Allstate Indemnity Company is the only definition relevant to this court's interpretation analysis. We would submit that's an absolute contra statement of state law. That is not what Missouri state law says you should do and not what was argued either by Allstate or Rice. So let's look at that ambiguity. Analyzing both of those, there is no dispute here coming from the Rices that the driver of this vehicle, Mr. Wiebe, was an insured person. So if this court would analyze the insured person definition as the trial court did, you would find no coverage. What I think was missing from the trial court's level and what this court must do is analyze the second provision in relationship. And so we look at what Missouri case law says is first we must determine if there is an ambiguity. And that ambiguity, according to the trial court, is if coverage is given in one place, yet taken away in another. Well, in the permissive use language, are you looking at that in the excess policy that we're dealing with, the umbrella, I shouldn't say the umbrella policy, or are you looking at in the underlying policy? Just the umbrella. This is all about the umbrella. There was mention at the trial court level of that underlying policy, but I think the relevant inquiry is purely for the umbrella policy. And so that will lead me to, if we look at what that permissive use says, it says we will cover, that's the promise of giving coverage that the Missouri Supreme Court is looking for. We will cover personal activities of an insured person, including the permissive use of a land vehicle or motorcraft owned by an insured person. This is addendum 13 here. It's page 13 of your addendum. And as I read Allen, this is completely different because permissive use provision in Allen was in the liability policy and the insured attempted to reach out and drag it into the excess. Whereas here we have it in the excess. We have it in the excess. This definition of permissive use You don't even need to argue an ambiguity to me. Well, and I agree. Because if we take Underwood, the name of the insured, and substitute it here. Everybody agrees that Underwood is the insured. Personal activities of the Underwoods, including permissive use of a land vehicle owned by the Underwoods. Well, that's what we have here. Obviously, permissive use invokes a third party. It makes no sense for this to be able to say Underwoods gave permissive use to the Underwoods. Why aren't the key two words personal activities? Personal activities is separate from I'm making your argument. I know. And I'm with you. They argued just They're saying that personal activities of an insured person are covered. And the personal activities include the result of you giving permissive use of your automobile. Amen. What they say is that all it does is separate from commercial Did you argue that at the district court? That was not I didn't reach a briefs to the district court, but I mean That issue in particular was not argued to the court because what happened was the court never got to this paragraph. But you just said both clauses were argued. Both argues were set before the court, but the trial court ignored that. There's no other And so, I mean, we could put I was asking whether you argued it, I mean, whether you This paragraph was put in front of it, but not specifically just that this part was the only issue that to be addressed, the personal activities. What we did argue was that you had to have a third party involved in it as a permissive use. And that is what we're arguing here. And so under Missouri law, if you give it in one place, the permissive use I don't understand the law there, but maybe folks aren't reading this. What did you say? You argued this provision to the district court, to Judge Wimes? Yes, sir. You made the same argument? In paper. That's right. You didn't have a hearing, but In paper, you In paper, both parties argued In this file, in the umbrella policy In the umbrella policy, this particular provision was argued by all state. Paragraph 29 in their declaratory judgment, appendix pages 5 and 6, cited that specific provision. Rice cited that specific provision and was not addressed, in fact, ignored by the trial court. I see my time is up. Well, you have some time for rebuttal if you wish. I'll be back. Okay. Good morning. Good morning, Your Honor. Is it Chunning? Chunning. Chunning? Chunning. Chunning, okay. Yes. I've been wrong on every one today. I apologize. That's fine. That's fine. You may proceed. May it please the court. Some of the confusion that arises in this case was because at the case below, there was argument presented by the judge in the case below, and the judge presented by Ms. Rice, that the excess umbrella policy was a following policy that followed the auto policy. And it is not. It is a stand-alone policy that does not follow the terms of the auto policy. Well, I got an impression that we were, at least from reading the district court's opinion, because I haven't looked at the briefs that went on down in the district court. I got the impression the district court thought there was a mixing here between the umbrella policy and the underlying policy, and which are even two different entities of all state. But I heard counsel today say, no, we're just looking at the umbrella policy and these two provisions, the definition of insured person, and on page 13 of the addendum, permissive use. Now, first of all, was that argued in the briefs in the district court? Number two, how do you explain that? I don't see that the district court addressed it. Well, and Your Honor, I believe that the district court Number one, did you argue, was it argued? Yes. This clause was raised and discussed in the district court below. I believe the concept of looking at the policy as a whole, and did look at the policy as a whole, and found that this did not create an ambiguity. Where was the coverage XL provision? I just skimmed the opinion again. I don't see it referred to. He did not discuss that in the opinion itself. He did recognize that the court, when analyzing an insurance contract, must consider the entire policy and not just isolated provisions. Well, he quoted the law, and all of us do that. Right. We all write our opinion. We quote all the law, the boilerplate. But the important part of the opinion is the analysis of when the court, whether it's a district court, or a court of appeals, or magistrate, or whoever. And I didn't see that, in fact. I was confused on where this was and where it was going. But now that you say that this was done, what's your response? Well, Your Honor, I... Being done meaning, I mean, the issue was raised, just not apparently addressed by the district court. Correct. Well, my response is that the district court obviously determined that the language didn't alter the definition of the insurance. No. Let's forget what the district court thought or didn't think. Why isn't the plain language of coverage XL, that among the coverages provided for the insured persons, is liability resulting from the personal activity of giving someone else permission to use their vehicle? Well... And that, to me, is what the plain language says. What the plain language says, Your Honor, I believe, when considered with the policy as a whole, including the definition of who is an insured, this says that the... Paragraph one, paragraph one talks about an insured person, not Weeby, talking about the Underwoods. Right. The personal activities of an insured person are covered. Right. That is liability resulting, you know, from an occurrence, you know, and so forth. Exactly. All right. And the personal activities that are covered include liability resulting from the permissive use, that is, the use of a vehicle owned by the insured person being operated by someone else with the insured person's permission. Exactly. And what that says is... What that says, Your Honor, is that the Underwoods are protected from liability that arises from a permissive use of one of their vehicles. For example, if they are sued because they have given permissive use... So what liability is being sought here? No, your language says we will cover an occurrence. That's insurance language, not of individual. We're going to cover the occurrence. That's a term of art in insurance. It is. And it says arising only out of personal activities of an insured, which defines this as a personal liability policy rather than a business policy. And it says that personal activities of the insured will include claims arising out of permissive use of one of their saying, hey, you got sued because somebody else was driving your car, not because you were driving your car. That's not a personal activity of you. Well, now, what case, you know, you rely heavily on Allen. That's completely distinguishable. So what case stands for the notion that there's no coverage for the occurrence if the insured can effectively avoid personal liability? Well... There's no coverage. Well, actually, what happened, your Honor, a settlement was reached and an agreement not to sue. Payments were made under both automobile insurance policies. And that settlement was reached and Ms. Rice received $350,000. The only issue here is does this personal umbrella policy provide additional coverage to those? Your client paid under the liability policy for an accident in which the underwoods couldn't be personally liable. It was an auto policy and they were required to do that under Missouri law because he was a permissive user. Okay, so what excess, tell me the excess case or cases to read that even though there's the plain language that there's an occurrence for the coverage, there's no duty to indemnify unless the insured person is personally liable? Well, the most persuasive or the case that deals with this with identical facts and nearly identical language is the Allstate v. Hendricks case. And that is a Georgia case. It is not a Missouri case. But that case dealt with identical facts to this situation and dealt with identical language with the only difference being that rather than the term permissive use, that included language regarding the lending of a vehicle. And lending of a vehicle language is simply more broad than permissive use. A permissive user, I can loan a vehicle to you, A, and he is a permissive user. But if he then in turn without my permission loans it to B, then B is not a permissive user. But your argument would result in no duty to defend. Well, if there is no coverage, there's no duty to defend under the umbrella policy. That would be correct. Now, the duty of defense is not an issue here because that duty has been satisfied by the agreement. Is there ever a duty to defend if there's an excess carrier? Sure, I guess the primary carrier is bankrupt. Doesn't the duty to defend go up or down the ladder, so to speak, to the excess? Well, I think I've seen that. I think I've seen those. It may or may not, Your Honor. Quite honestly, the duty to defend was not an issue that was raised in this case. Well, no, but the implications of your argument are is that there would be no duty to defend here even though that would be precisely what the Underwoods would be buying, that one form of personal protection they would want from an excess policy. Well, now let's be clear. There absolutely would be a duty to defend if the Underwoods were the party that was being sued, yes, because the Underwoods, as the owner of the vehicle and the policyholder here, have purchased this policy to protect them and it agrees to protect them. Well, they'd always be susceptible to being third-partied in or sued at the end of the underlying case. Well, and again, if it were the Underwoods that were being challenged, then yes, I believe all State would have a duty to defend, but the permissive driver here is who is at issue and there is no coverage to that permissive driver because the language talks about that we will ensure the Underwoods for claims arising out of permissive use of their vehicle. You keep saying that and I understand the argument. That's not what it says and I find it very curious. It doesn't say we will cover the Underwoods. It says we will cover an occurrence arising out of blah, blah, blah, blah, blah. In other words, if there's an occurrence where the Underwoods had given permissive use to a land vehicle, the umbrella policy covers that occurrence. Well, the applicability of the policy, and again, has to be analyzed not by pulling this clause out, but it has to be analyzed by the policy as a whole. And obviously, the parameters of who is insured sets the parameters of the application of the policy and what occurrences will be covered. This policy talks about occurrences, but it doesn't. I'm reading from the policy. Your client's policy. Occurrence means an accident during the policy period. Correct. But that doesn't expand the definition of who will be covered by this policy. That's the inquiry that needs to be made. It says including the permissive use of a vehicle owned by the insured person. That occurrence. And that's what happened here. But it doesn't say the permissive user. Pardon me? It says it will protect the Underwoods for claims arising out of the permissive use of one of their vehicles. So is your argument really the issue of what does loss mean? Well, I believe my argument is the analysis of who actually is an insured under this policy is the definition of who is insured ambiguous by any other terms of policy that expands their own. As the Chief Judge points out, the plain language of that clause in isolation says there's coverage. Correct. Because the insured person engaged in an activity which will lead to an accident and therefore the risk of liability. Okay. But you're saying, well, yeah, but they weren't really, they aren't really liable personally. They might be liable as car owners, but that's a different policy. And there's no vicarious liability in this particular situation. There might be elsewhere in another. And so therefore we just read that out of the policy. Well, no. You can't. Your Honor, I don't You can't get there with the word insured person. And we can't get there with the word occurrence. How do we get there? Well, insured person is defined in the policy. And the definition is not ambiguous. Insured person is bolded in that clause. I see my time is up. Finish your answer. Continue. When the insured person is defined in the policy and under Missouri law when it's defined and there's no ambiguity there, then that must be followed. And there is no ambiguity in the definition of insured person. Again, what this clause, by pulling it out and looking at it in isolation is directly contrary to the rules of interpretation. You have to look at all of the policy as a whole. We're trying to do that. We've gone to the occurrence definition. We've gone all over the policy. And we're pleading with you to tell us where in the policy this sort of rather somewhat counterintuitive proposition that insured person doesn't really mean insured person. Well, no. Insured person doesn't mean Insured person in this provision doesn't mean there's coverage for this provision. No. Insured person doesn't mean the permissive user of a vehicle. It doesn't extend beyond those people that are insured. Because it's a personal umbrella policy. I think you have to get there by losses. Let's assume that we agree with it. The interpretation could be reasonable. But the interpretation of Mr. Bowe is likewise reasonable. Then doesn't that trigger Missouri law which says the tie goes to the insured? Well, my position, of course, would be that Mr. Bowe's definition is not reasonable. Because what it does, it requires this clause to be taken out of context of the other definitions that are contained in the policy. Well, we have to say that this is ambiguous. Well, does that create an ambiguity in the policy? It seems to me there's some law that says that when there's an ambiguity, it's kind of a tie in favor of the runner. And the courts seem to lean toward insurance coverage. That is correct, Your Honor. And where's the parts missing in this case that doesn't follow that? Most recently in Jones, 287 Southwest 3rd at 8689. That's where I got that. Well, Your Honor, again, an ambiguity cannot be created, though, by taking a clause out of context of the remaining portions of the policy itself. And again, when this clause is measured against the definition of who is actually insured under this policy, then it is not ambiguous. Because it does specifically state that it will cover occurrences arising out of the insured people's activities. And that includes any claim against them for the permissive use of their vehicle. Because their personal activities would include permissively allowing the user... Were the Underwoods parties to the 537.065 agreement? The Underwoods were not. The Underwoods were not sued in this. And in the agreement itself, it was stipulated that there was no claim that Ms. Rice had against the Underwoods. Well, but you can understand the coverage here. The permissive use can leave a claim where the Underwoods loaned their car to a drunken teenager who went out and hurt somebody. Would you say this covers that? If the Underwoods were sued because of loaning that to a drunken teenager, then absolutely. Because that would be a claim against the insured that arose out of them granting permissive use of their vehicle. Okay. But it would also cover the drunken teenager, right? I don't think the umbrella policy would. And you're reading that out of this. It would cover the Underwoods if they're individually sued, but the drunken teenager is on their own. Because this is... Under the umbrella policy. This is not an auto policy. This is an excess policy. I understand. I know you do, Your Honor. But it's not an auto policy that is required to protect permissive drivers as the auto policies are. What this is, this is something that the Underwoods bought to protect them. If they got sued out of their own activities. Yeah, I understand. I mean, that's your best argument. It's a good argument. Anyway, your time's expired. Sure. Thank you, Your Honor. I appreciate it. What's the time, Mr. Bowling? Three minutes. Three minutes. Let me just address a few arguments because the Court's absolutely right. What we have here is an argument by all states taking it away to the definition of insured. And by the very plain language of the permissive use of a cigarette. Where's the loss? Where's the loss? Yeah. The loss here is we have Ms. Rice who has catastrophic losses. And under this definition of occurrence and under the injuries, there's no dispute that Ms. Rice's losses far exceed anything that she has been paid. And so here... What case says that the loss, which is a common liability policy term, that the loss includes losses for which the insured cannot be liable? Well, I don't have that case here right now. That's the rub. Well, no, that's not the rub. Because that's not what's been argued here. And what we have, in fact, is what you have pointed out. That was this morning. What's been argued this morning is new. No, that was clearly this morning. All that was clearly. What we have here is two provisions that contradict each other. And as was pointed out by Judge, they absolutely do. We believe they absolutely grant coverage. Because here, the word loss, they say we will cover an occurrence. The definition of occurrence is there. We will cover that occurrence. And that occurrence should be covered under duty to defend and a duty to identify. And umbrella coverages are often invoked to provide that defense. There has to be an occurrence and there has to be a loss for there to be coverage under a liability policy. I mean, I think the case books are legion to that. They are legion to that. But here, what we have... There's probably four chapters in Appelman. If we look at the losses on appendix or addendum 13, it defines losses for us. And if that's where we're going to go, losses we cover under coverage XL, page 4 of the policy, addendum 13. But I think if we follow the case law that was discussed in Jones and other Supreme Court cases out of the state of Missouri, if coverage is granted in one place and taken away in the other, just as we've pointed out, then that creates that ambiguity. And the next question is, what do we do with that ambiguity? And I think that's what you were referring to, the contra profferentum argument, is that if there's two possible interpretations, then the tie goes to the person making the claim, not the insurance company. And what we have here is a beautiful argument about, well, it might cover negligent entrustment. It might cover something else. But we're reading new words into this provision of this policy when, by the very plain words, there is coverage for an occurrence, for personal activities, for loaning... Let me put your answer to counsel's argument, which I just said was a good one, which is the purpose of an umbrella policy is to protect the named insureds over and above all of their other items. It could be homeowners insurance. It could even be business insurance. It could be all kinds of things. And it's really for their protection, not other people's. And here I think a reasonable insurer, which is the question under Missouri law, would say, we're seeking protection from any and all claims, from any and all lawsuits. We want the broadest type of protection. We're going out and buying more. We want all the raindrops off of it. All right. Let's take this case with one different fact. The primary liability carrier was different. And so Ms. Rice sues Weeby. And the owner's liability insurer comes in, defends, helps defend. There's this 367, 537.065, same parties. Here's what I think. Your argument is that Allstate, which has now never even set foot in, never even heard of this case, is liable under the umbrella policy. What would be different? No. What would be different, what's missing out of that hypothetical, if it's another company, whatever company it is, State Farm, we'll call it State Farm. In this case, oh my goodness, we have liability. Oh my goodness, our damages far exceed any amount of coverage. What other coverage do we have? We call up State Farm. And we tell them, you better be on the lookout. No, wait. State Farm's the primary. Oh, okay. Allstate. We've got Allstate as the primary. You're saying Allstate would almost surely have heard of this. Yeah. The underlying insurance company always... They say the underwoods are an apartment. You notify every carrier. Whether you're the carrier, the plaintiff, you dig around for every policy. Well, so what? The underwoods aren't a party to the agreement. They weren't a party to the lawsuit. But they are a party to this insurance policy that says, we will cover an occurrence. And if you look at the definition of occurrence, it's any accident. It doesn't say... Have you got a case where an excess carrier was held in under my hypothetical? The primary's different and the excess... Not in Missouri. Was not a party. Not under Missouri law. That hasn't been litigated. And what we see with the argument is from another state in Allstate versus Hendricks. It's a different policy with different words interpreted under different... Was that a different primary carrier in Hendricks? I don't know. I don't know if that was the same primary carrier. Allstate had the primary... It certainly makes a difference to the dynamics of the litigation in the settlement. Here, at least, Allstate was a party to the agreement, right? They were the party to the agreement. And it wasn't actually... If we're being exactly technical, it's a different corporation. They may both have Allstate in the first, but they are two different corporations, two services of process, two different shareholders' agreement. I'm sure... Sir, not in the underlying. I mean, in this case. In this case, Allstate, for the car insurance... But was Allstate indemnity involved in the underlying action at all? They obviously knew about it, participated in... Of course they knew about it. Participated? Where's the evidence of that? 537-065 agreement. Says... Says, we know about this policy. Here's the plan to move forward. They're not going to gang up on the excess? No, there was nothing... There was not... Typically, 537-065 agreements sometime have something that may not smell the best, that we're going to gang up on them. That was not invoked here. This was a... Everybody knew what was going on. There was arrangements of how the D.J. action was going to be filed. Everybody knew exactly what was going to happen. But if... But your argument would be that even if Allstate never heard of that agreement... And I'm just suggesting... First thing they ever heard of the accident was this lawsuit. You'd say there's still coverage under the indemnity policy, right? I'm saying that is not what typically happens in a litigation like this. But if that typically happened outside the bounds of something else, I think if they didn't know about it, then they could not be held to some underlying judgment. But that's not what we had here. I mean, if Allstate in this case... If there was some adulterous agreement below and a huge judgment... No, no, no. Forget all that stuff. I mean, we're talking about... They had no basis... The excess had no basis to be involved because the insured wasn't... There was no personal liability to the insured. And the insured wasn't sued. And in the agreement, the insured was absolved of potential liability. And you would say, based on this argument, the excess is still liable. I would say that in this case, that's not what happened. And so, without knowing what went on... I mean, if they got noticed, they didn't get noticed. Thank you, Your Honor. Okay. Thank you for your arguments. They helped clarify this for me, anyway. So, with that, we'll take it under advisory.